1   David B. Potter, State Bar No. 85813
ARRACHE & POTTER
2   1200 Truxtun Avenue, Suite 200
Bakersfield, CA 93309
3   *Mailing Address:*
P.O. Box 10809
4   Bakersfield, CA 93389-0809
Telephone:    (661) 328-1800
5   Facsimile:    (661) 328-0380
E-mail:    dpotter@acplaw.com
6
Attorneys for Use-Plaintiff,
7   HPS MECHANICAL, INC.

8

9

## UNITED STATES DISTRICT COURT

10

## SOUTHERN DISTRICT OF CALIFORNIA

11

12

| | |
|---|---|
| UNITED STATES OF AMERICA, for the use and benefit of: | Case No. **'18CV2797 WQHJLB** |
| HPS MECHANICAL, INC., A California Corporation; | **COMPLAINT FOR RECOVERY ON MILLER ACT PAYMENT BOND (40 USC §3133)** |
| Use-Plaintiff, | |
| vs. | |
| S & R CONSTRUCTION, A Joint Venture; A.O. REED & CO., A California Corporation; SOLPAC CONSTRUCTION, INC., A California Corporation; LIBERTY MUTUAL INSURANCE COMPANY, A Corporation; | **Demand for Jury Trial** |
| Defendants. | |

Use-Plaintiff HPS MECHANICAL, INC., alleges:

1.    <u>JURISDICTION</u>: This action is brought pursuant to and jurisdiction is conferred by Title 40, United States Code, §§3131-3133.

2.     Use-Plaintiff HPS MECHANICAL, INC. ("HPS") is a corporation organized and existing under the laws of the State of California, with its principal place of business in the County of Kern, California.

3.     Defendant LIBERTY MUTUAL INSURANCE COMPANY ("LIBERTY MUTUAL") is a corporation authorized and licensed to do business in the State of California as a surety issuing bonds required by law or contract by the United States and various agencies within the jurisdiction of this Court.

4.     Defendant S & R CONSTRUCTION, A Joint Venture, is a joint venture between defendants A.O. REED & CO. and SOLPAC CONSTRUCTION, INC.

5.     Defendant A.O. REED & CO. is a corporation duly organized and existing under the laws of the State of California.  Defendant SOLPAC CONSTRUCTION, INC. is a corporation duly organized and existing under the laws of the State of California.

6.     The contract which is the subject of this complaint was performed in the City of San Diego, County of San Diego, California.

7.     Defendant S & R CONSTRUCTION, a joint venture of two licensed general contractors, entered into a written contract with the United States of America, by and through the Department of the Navy. Use-Plaintiff HPS is informed and believes and based thereon alleges that said contract is dated about September 17, 2015, and is referenced as Contract #N62473-15-C-1604 (hereinafter "Prime Contract"), by the terms of which S & R CONSTRUCTION agreed to perform specified construction work at the Naval Base San Diego (hereinafter, "the Project").

8.      Use-Plaintiff HPS is informed and believes and thereon alleges that under 40 USC Sections 3131-3134, defendant S & R CONSTRUCTION, as principal, and defendant LIBERTY MUTUAL INSURANCE COMPANY, as surety, executed and delivered a payment bond to the United States, whereby these defendants bound themselves jointly and severally for the purpose of allowing a joint action or actions against any or all of them and bound themselves in a sum of money equal to the contract price.

9.      Thereafter, defendant S & R CONSTRUCTION, A Joint Venture, entered into a written subcontract with Use-Plaintiff HPS to perform certain work on the Project. A copy of the pertinent portion of the contract is attached hereto as Exhibit A.

10.     Between February 12, 2016 and December 21, 2017, Use-Plaintiff HPS furnished labor, material, services and equipment pursuant to the written contract between Use-Plaintiff HPS and defendant S & R CONSTRUCTION (Exhibit A) at the specific request of S & R CONSTRUCTION, in the execution of the work required in the Prime Contract between S & R CONSTRUCTION and the United States.

11.     Under the subcontract between Use-Plaintiff HPS and S & R CONSTRUCTION, S & R CONSTRUCTION agreed to pay Use-Plaintiff HPS for said labor, material, services and/or equipment in the amount of $2,051,085.00 including Change Orders.

12.     Use-Plaintiff HPS has fully and completely performed all promises on said Use-Plaintiff's part to be performed under its contract with S & R CONSTRUCTION and under the bond, and all of the conditions precedent to performance on the part of defendants, and each of them, have occurred.

13.     Of the total price (including Change Orders) for labor, material, services, and/or equipment furnished by Use-Plaintiff HPS to S & R CONSTRUCTION, only a partial sum has been paid. There is currently owed a balance of $392,567.00 remaining due, owing and unpaid to Use-Plaintiff.

14.     Use-Plaintiff HPS last furnished labor, material, services, and/or equipment on the Project within the year immediately preceding the date this complaint was filed.

15.     A period of ninety (90) days has now elapsed since Use-Plaintiff HPS last provided labor, material, services, and/or equipment to S & R CONSTRUCTION.

16.     Use-Plaintiff gave written notice, in the manner required by law to Defendant S & R CONSTRUCTION, that Use-Plaintiff HPS had supplied said material in the prosecution of the work, was owed a substantial sum, and demanded payment from Defendant S & R CONSTRUCTION.

17.     Under the payment bond executed between defendants S & R CONSTRUCTION and LIBERTY MUTUAL, defendant LIBERTY MUTUAL is jointly and severally obligated to provide payment to Use-Plaintiff for work performed on the Project.  Accordingly, on the failure of S & R CONSTRUCTION to compensate Use-Plaintiff for the work performed, defendant LIBERTY MUTUAL is obligated to pay Use-Plaintiff the amount set forth above.

WHEREFORE, the United States of America, for the use and benefit of Use-Plaintiff HPS MECHANICAL, INC., prays for judgment against defendants and each of them as follows:

1.     For the sum of $392,567.00, and such additional sums that become due up to the date of trial, according to proof;

2.     For interest on said sum at the legal rate per annum from December 21, 2017, through the date of judgment;

3.    For reasonable attorney's fees under the terms of said Subcontract;

4.    For costs of suit incurred herein;

5.    For such other and further relief as the Court deems proper; and

6.    Plaintiff demands a trial by jury for the above-entitled action.


DATED:   December 12,  2018          ARRACHE & POTTER


By: /s/ David B. Potter _____
DAVID B. POTTER
Attorney for Plaintiff, Use-Plaintiff,
HPS MECHANICAL, INC.

Complaint for Recovery on Miller Act Payment Bond (40 USC §3133)

# THE ASSOCIATED GENERAL CONTRACTORS OF AMERICA



## AGC DOCUMENT NO. 455

# STANDARD FORM OF AGREEMENT BETWEEN
# DESIGN-BUILDER AND SUBCONTRACTOR

### (Where the Design-Builder and Subcontractor Share the Risk of Owner Payment)

## TABLE OF ARTICLES

1.  AGREEMENT

2.  SCOPE OF WORK

3.  SUBCONTRACTOR'S RESPONSIBILITIES

4.  DESIGN-BUILDER'S RESPONSIBILITIES

5.  PROGRESS SCHEDULE

6.  SUBCONTRACT AMOUNT

7.  CHANGES IN THE SUBCONTRACT WORK

8.  PAYMENT

9.  INDEMNITY, INSURANCE AND WAIVER OF SUBROGATION

10. DESIGN-BUILDER'S RIGHT TO PERFORM SUBCONTRACTOR'S RESPONSIBILITIES AND TERMINATION OF AGREEMENT

11. DISPUTE RESOLUTION

12. MISCELLANEOUS PROVISIONS

13. EXISTING SUBCONTRACT DOCUMENTS

This Agreement has important legal and insurance consequences. Consultation with an attorney and an insurance consultant is encouraged with respect to its completion or modification.

# ARTICLE 1
# AGREEMENT

This Agreement is made this **Wednesday, February 10, 2016** by and between the DESIGN-BUILDER

**S & R Construction, A Joint Venture**
**2424 Congress Street**
**San Diego, CA 92110-2819**
**Phone (619) 296-6247**
**Fax (619) 296-0730**

and the CONSULTANT **010P80002509S**

**HPS Mechanical, Inc.**
**7815 Silverton Avenue**
**San Diego, CA   92126**

for services in connection with the subcontract work

**Underground Heating Steam, Condensate Return, Domestic Hot Water and Hot Water Return Piping**

at the following project

P 800 Steam Distribution System Decentralization

OWNER
Naval Facilities Engineering Command
1220 Pacific Highway
**San Diego, CA 92132**

The Architect/Engineer for the Project is

**S & R Construction, A Joint Venture**
**2424 Congress Street**
**San Diego, CA 92110-2819**

Notice to the parties shall be given at the above addresses.

# ARTICLE 2
# SCOPE OF WORK

2.1 SUBCONTRACT WORK The Design-Builder contracts with the Subcontractor as an independent contractor to provide all labor, materials, equipment and services necessary or incidental to complete the work described in Article 1 for the Project in accordance with, and reasonably inferable from, that which is indicated in the Subcontract Documents, and consistent with the Progress Schedule, as may change from time to time. The Subcontractor shall perform the Subcontract Work under the general direction of the Design-Builder and in accordance with the Subcontract Documents.

2.2 DESIGN-BUILDER'S WORK The Design-Builder's work is the construction and services required of the Design-Builder to fulfill its obligations pursuant to its agreement with the Owner (the Work). The Subcontract Work is a portion of the Work.

2.3 SUBCONTRACT DOCUMENTS The Subcontract Documents include this Agreement, the Owner -Design-Builder agreement, special conditions, general conditions, specifications, drawings, addenda, Subcontract Change Orders, amendments and any pending and exercised alternates. The Design-Builder shall make available to the Subcontractor, prior to the execution of the Subcontract Agreement, copies of the Subcontract Documents to which the Subcontractor will be bound. The Subcontractor similarly shall make copies of applicable portions of the Subcontract Documents available to its proposed subcontractors and suppliers. Nothing shall prohibit the Subcontractor from obtaining copies of the Subcontract Documents from the Design-Builder at any time after the Subcontract Agreement is executed. The Subcontract Documents existing at the time of the execution of this Agreement are set forth in Article 13.

2.4 CONFLICTS In the event of a conflict between this Agreement and the other Subcontract Documents, this Agreement shall govern.

2.5 EXTENT OF AGREEMENT Nothing in this Agreement shall be construed to create a contractual relationship between persons or entities other than the Design-Builder and Subcontractor. This Agreement is solely for the benefit of the parties, represents the entire and integrated agreement between the parties, and supersedes all prior negotiations, representations, or agreements, either written or oral.

2.6 DEFINITIONS

 1. Wherever the term Progress Schedule is used in this Agreement, it shall be read as Project Schedule when that term is used in the Subcontract Documents.

 2. Whenever the term Change Order is used in this Agreement, it shall be read as Change Document when that term is used in the Subcontract Documents.

 3. Unless otherwise indicated, the term Day shall mean calendar day.

# ARTICLE 3
# SUBCONTRACTOR'S RESPONSIBILITIES

Exhibit A

3.1 OBLIGATIONS The Design-Builder and Subcontractor are mutually bound by the terms of this Subcontract. To the extent the terms of the agreement between the Owner and Design-Builder apply to the work of the Subcontractor, then the Design-Builder hereby assumes toward the Subcontractor all the obligations, rights, duties, and remedies that the Owner assumes toward the Design-Builder. In an identical way, the Subcontractor assumes toward the Design-Builder all the same obligations, rights, duties, and redress that the Design-Builder assumes toward the Owner. In the event of an inconsistency among the documents, the specific terms of this Subcontract shall govern.

3.2 RESPONSIBILITIES The Subcontractor agrees to furnish its best skill and judgment in the performance of the Subcontract Work and to cooperate with the Design-Builder so that the Design-Builder may fulfill its obligations to the Owner. The Subcontractor shall furnish all of the labor, materials, equipment, and services, including but not limited to, competent supervision, shop drawings, samples, tools, and scaffolding as are necessary for the proper performance of the Subcontract Work. The Subcontractor shall provide the Design-Builder a list of its proposed subcontractors and suppliers, and be responsible for taking field dimensions, providing tests, obtaining required permits, related to the Subcontract Work and affidavits, ordering of materials and all other actions as required to meet the Progress Schedule.

3.3 INCONSISTENCIES AND OMISSIONS The Subcontractor shall make a careful analysis and comparison of the drawings, specifications, other Subcontract Documents and information furnished by the Owner relative to the Subcontract Work. Such analysis and comparison shall be solely for the purpose of facilitating the Subcontract Work and not for the discovery of errors, inconsistencies or omissions in the Subcontract Documents nor for ascertaining if the Subcontract Documents are in accordance with applicable laws, statutes, ordinances, building codes, rules or regulations. Should the Subcontractor discover any errors, inconsistencies or omissions in the Subcontract Documents, the Subcontractor shall report such discoveries to the Design-Builder in writing within three (3) days. Upon receipt of notice, the Design-Builder shall instruct the Subcontractor as to the measures to be taken and the Subcontractor shall comply with the Design-Builder's instructions. If the Subcontractor performs work knowing it to be contrary to any applicable laws, statutes, ordinances, building codes, rules or regulations without notice to the Design-Builder and advance approval by appropriate authorities, including the Design-Builder, the Subcontractor shall assume appropriate responsibility for such work and shall bear all associated costs, charges, fees and expenses necessarily incurred to remedy the violation. Nothing in this paragraph shall relieve the Subcontractor of responsibility for its own errors, inconsistencies and omissions.

3.4 SITE VISITATION Prior to performing any portion of the Subcontract Work, the Subcontractor shall conduct a visual inspection of the Project site to become generally familiar with local conditions and to correlate site observations with the Subcontract Documents. If the Subcontractor discovers any discrepancies between its site observations and the Subcontract Documents, such discrepancies shall be promptly reported to the Design-Builder.

3.5 INCREASED COSTS AND/OR TIME The Subcontractor may assert a Claim as provided in Article 7 if Design-Builder's clarifications or instructions in responses to requests for information are believed to require additional time or cost. If the Subcontractor fails to perform the reviews and comparisons required in Paragraphs 3.3 and 3.4, above, to the extent the Design-Builder is held liable to the Owner because of the Subcontractor's failure, the Subcontractor shall pay the costs and damages to the Design-Builder that would have been avoided if the Subcontractor had performed those obligations.

3.6 COMMUNICATIONS Unless otherwise provided in the Subcontract Documents and except for emergencies, Subcontractor shall direct all communications related to the Project to the Design-Builder.

3.7  SUBMITTALS—**In addition to items listed below see ATTACHMENT "A" AND ATTACHMENT "B" FOR FURTHER CLARIFICATION AND REQUIREMENTS**

3.7.1  The Subcontractor promptly shall submit for approval to the Design-Builder all Shop Drawings, samples, product data, manufacturer's literature and similar submittals required by the Subcontract Documents. The Subcontractor shall be responsible to the Design-Builder for the accuracy and conformity of its submittals to the Subcontract Documents. The Subcontractor shall prepare and deliver its submittals to the Design-Builder in a manner consistent with the Progress Schedule and in such time and sequence so as not to delay the Design-Builder or others in the performance of the Work. The approval of any Subcontractor submittal shall not be deemed to authorize deviations, substitutions or changes in the requirements of the Subcontract Documents unless express written approval is obtained from the Design-Builder and Owner authorizing such deviation, substitution or change. In the event that the Subcontract Documents do not contain submittal requirements pertaining to the Subcontract Work, the Subcontractor agrees upon request to submit in a timely fashion to the Design-Builder for approval all shop drawings, samples, product data, manufacturers literature or similar submittals as may reasonably be required by the Design-Builder.

3.7.2  The Design-Builder and Owner are entitled to rely on the adequacy, accuracy and completeness of all professional certifications required by the Subcontract Documents concerning the performance criteria of systems, equipment or materials, including all relevant calculations and governing performance requirements.

3.8  DESIGN DELEGATION

3.8.1  If the Subcontract Documents (1) specifically require the Subcontractor to provide design services and (2) specify all design and performance criteria, the Subcontractor shall provide those design services necessary to satisfactorily complete the Subcontract Work. Design services provided by the Subcontractor shall be procured from licensed, design professionals retained by the Subcontractor as permitted by the law of the place where the Project is located (the Designer). The Designer's signature and seal shall appear on all drawings, calculations, specifications, certifications, Shop Drawings and other submittals prepared by the Designer. Shop Drawings and other submittals related to the Subcontract Work designed or certified by the Designer, if prepared by others, shall bear the Subcontractor's and the Designer's written approvals when submitted to the Design-Builder. The Design-Builder shall be entitled to rely upon the adequacy, accuracy and completeness of the services, certifications or approvals performed by the Designer.

3.8.2  If the Designer is an independent professional, the design services shall be procured pursuant to a separate agreement between the Subcontractor and the Designer. The Subcontractor-Designer agreement shall not provide for any limitation of liability, except to the extent that consequential damages are waived pursuant to Subparagraph 5.4.1, or exclusion from participation in the multiparty proceedings requirement of Paragraph 11.4. The Designer(s) is (are) Not Applicable. The Subcontractor shall notify the Contractor in writing if it intends to change the Designer. The Subcontractor shall be responsible for conformance of its design with the information given and the design concept expressed in the Subcontract Documents. The Subcontractor shall not be responsible for the adequacy of the performance or design criteria required by the Subcontract Documents.

3.9  TEMPORARY SERVICES Subcontractor's responsibilities for temporary services are set forth in Attachment A̲.

3.10 COORDINATION  The Subcontractor shall:

1.  Cooperate with the Design-Builder and all others whose work may interface with the Subcontract Work;

2.  Specifically note and immediately advise the Design-Builder of any such interface with the Subcontract Work; and

3.  Participate in the preparation of coordination drawings and work schedules in areas of congestion.

3.11 SUBCONTRACTOR'S REPRESENTATIVE The Subcontractor shall designate a person, subject to Design-Builder's approval, who shall be the Subcontractor's authorized representative. This representative shall be the only person to whom the Design-Builder shall issue instructions, orders or directions, except in an emergency. The Subcontractor's representative is See Attachment B who is agreed to by the Design-Builder.

3.12 TESTS AND INSPECTIONS The Subcontractor shall schedule all required tests, approvals and inspections of the Subcontract Work at appropriate times so as not to delay the progress of the Work. The Subcontractor shall give proper written notice to all required parties of such tests, approvals and inspections. The Subcontractor shall bear all expenses associated with coordinate tests, inspections and approvals required of the Subcontractor by the Subcontract Documents which, unless otherwise agreed to, shall be conducted by an independent testing laboratory or entity approved by the Design-Builder and Owner. Required certificates of testing, approval or inspection shall, unless otherwise required by the Subcontract Documents, be secured by the Subcontractor and promptly delivered to the Design-Builder.

3.13 CLEANUP

3.13.1  The Subcontractor shall at all times during its performance of the Subcontract Work keep the Worksite clean and free from debris resulting from the Subcontract Work. Prior to discontinuing the Subcontract Work in an area, the Subcontractor shall clean the area and remove all its rubbish and its construction equipment, tools, machinery, waste and surplus materials. Subcontractor shall make provisions to minimize and confine dust and debris resulting from its construction activities. The Subcontractor shall not be held responsible for unclean conditions caused by others.

3.13.2  If the Subcontractor fails to commence compliance with cleanup duties within forty-eight (48) hours after written notification from the Design-Builder of non-compliance, the Design-Builder may implement appropriate cleanup measures without further notice and the cost thereof shall be deducted from any amounts due or to become due the Subcontractor.

3.14 SAFETY **In addition to items listed below SEE ATTACHMENT "E" FOR FURTHER CLARIFICATION AND REQUIREMENTS**

3.14.1  The Subcontractor is required to perform the Subcontract Work in a safe and reasonable manner. The Subcontractor shall seek to avoid injury, loss or damage to persons or property by taking reasonable steps to protect:

1.  Employees and other persons at the site;

2.  Materials and equipment stored at the site or at off-site locations for use in performance of the Work; and

3.  All property and structures located at the site and adjacent to work areas, whether or not said property or structures are part of the Project or involved in the Work.

3.14.2   The Subcontractor shall give all required notices and comply with all applicable rules, regulations, orders and other lawful requirements established to prevent injury, loss or damage to persons or property.

3.14.3   The Subcontractor shall implement appropriate safety measures pertaining to the Subcontract Work and the Project, including establishing safety rules, posting appropriate warnings and notices, erecting safety barriers, and establishing proper notice procedures to protect persons and property at the site and adjacent to the site from injury, loss or damage.

3.14.4   The Subcontractor shall exercise extreme care in carrying out any of the Subcontract Work which involves explosive or other dangerous methods of construction or hazardous procedures, materials or equipment. The Subcontractor shall use properly qualified individuals or entities to carry out the Subcontract Work in a safe and reasonable manner so as to reduce the risk of bodily injury or property damage.

3.14.5   Damage or loss not insured under property insurance which may arise from the performance of the Subcontract Work, to the extent of the negligence attributed to such acts or omissions of the Subcontractor, or anyone for whose acts the Subcontractor may be liable, shall be promptly remedied by the Subcontractor. Damage or loss attributable to the acts or omissions of the Design-Builder and not to the Subcontractor shall be promptly remedied by the Design-Builder.

3.14.6   The Subcontractor is required to designate an individual at the site in the employ of the Subcontractor who shall act as the Subcontractor's designated safety representative with a duty to prevent accidents. Unless otherwise identified by the Subcontractor in writing to the Design-Builder, the designated safety representative shall be the Subcontractor's project superintendent.

3.14.7   The Subcontractor has an affirmative duty not to overload the structures or conditions at the site and shall take reasonable steps not to load any part of the structures, or site so as to give rise to an unsafe condition or create an unreasonable risk of bodily injury or property damage. The Subcontractor shall have the right to request, in writing, from the Design-Builder loading information concerning the structures at the site.

3.14.8   The subcontractor shall give prompt written notice to the Design-Builder of all accidents involving bodily injury requiring a physician's care, all property damage exceeding Five Hundred Dollars ($500.00) in value, and all failures that could have resulted in serious bodily injury, whether or not such an injury was sustained.

3.14.9   Prevention of accidents at the site is the responsibility of the Design-Builder, Subcontractor, and all other subcontractors, persons and entities at the site. Establishment of a safety program by the Design-Builder shall not relieve the Subcontractor or other parties of their safety responsibilities. The Subcontractor shall establish its own safety program implementing safety measures, policies and standards conforming to those required or recommended by governmental and quasigovernmental authorities having jurisdiction and by the Design-Builder and Owner, including, but not limited to, requirements imposed by the Subcontract Documents. The Subcontractor shall comply with the reasonable recommendations of insurance companies having an interest in the Project, and shall stop any part of the Subcontract Work which the Design-Builder deems unsafe until corrective measures satisfactory to the Design-Builder shall have been taken. The Design-Builder's failure to stop the Subcontractor's unsafe practices shall not relieve the Subcontractor of the responsibility therefor. The Subcontractor shall notify the Design-Builder immediately following an accident and promptly confirm the notice in writing. A detailed written report shall be furnished if requested by the Design-

Builder. Each party to this Agreement shall indemnify the other party from and against fines or penalties imposed as a result of safety violations, but only to the extent that such fines or penalties are caused by its failure to comply with applicable safety requirements.

3.15 PROTECTION OF THE WORK The Subcontractor shall take necessary precautions to properly protect the Subcontract Work and the work of others from damage caused by the Subcontractor's operations. Should the Subcontractor cause damage to the Work or property of the Owner, the Design-Builder or others, the Subcontractor shall promptly remedy such damage to the satisfaction of the Design-Builder, or the Design-Builder may remedy the damage and deduct its cost from any amounts due or to become due the Subcontractor, unless such costs are recovered under applicable property insurance.

3.16 PERMITS, FEES, LICENSES AND TAXES The Subcontractor shall give timely notices to authorities pertaining to the Subcontract Work, and shall be responsible for all, permits, fees, licenses, assessments, inspections, testing and taxes necessary to complete the Subcontract Work in accordance with the Subcontract Documents. To the extent reimbursement is obtained by the Design-Builder from the Owner under the Owner -Design-Builder agreement, the Subcontractor shall be compensated for additional costs resulting from taxes enacted after the date of this Agreement.

3.17 ASSIGNMENT OF SUBCONTRACT WORK The Subcontractor shall not assign the whole nor any part of the Subcontract Work without prior written approval of the Design-Builder.

3.18 HAZARDOUS MATERIALS  To the extent that the Design-Builder has rights or obligations under its agreement with the Owner or by law regarding hazardous materials as defined by the Subcontract Document within the scope of the Subcontract Work, the Subcontractor shall have the same rights or obligations.

3.19 MATERIAL SAFETY DATA (MSD) SHEETS The Subcontractor shall submit to the Design-Builder all Material Safety Data Sheets required by law for materials or substances necessary for the performance of the Subcontract Work. MSD sheets obtained by the Design-Builder from other subcontractors or sources shall be made available to the Subcontractor by the Design-Builder.

3.20 LAYOUT RESPONSIBILITY AND LEVELS The Design-Builder shall establish principal axis lines of the building and site, and benchmarks. The Subcontractor shall lay out and be strictly responsible for the accuracy of the Subcontract Work and for all loss or damage to the Design-Builder or others by reason of the Subcontractor's failure to lay out or perform Subcontract Work correctly. The Subcontractor shall exercise prudence so that the actual final conditions and details shall result in alignment of finish surfaces.

3.21 WARRANTIES The Subcontractor warrants that all materials and equipment furnished under this Agreement shall be new, unless otherwise specified, of good quality, in conformance with the Subcontract Documents, and free from defective workmanship and materials. Warranties shall commence on the date of Substantial Completion of the Work or a designated portion.

3.22 UNCOVERING/CORRECTION OF SUBCONTRACT WORK

3.22.1   UNCOVERING OF SUBCONTRACT WORK

3.22.1.1   If required in writing by the Design-Builder, the Subcontractor must uncover any portion of the Subcontract Work which has been covered by the Subcontractor in violation of the Subcontract Documents or contrary to a directive issued to the Subcontractor by the Design-Builder. Upon receipt of a written directive from the Design-Builder, the Subcontractor shall uncover such work for the Design-

Builder's or Owner's inspection and restore the uncovered Subcontract Work to its original condition at the Subcontractor's time and expense.

3.22.1.2    The Design-Builder may direct the Subcontractor to uncover portions of the Subcontract Work for inspection by the Owner or Design-Builder at any time. The Subcontractor is required to uncover such work whether or not the Design-Builder or Owner had requested to inspect the Subcontract Work prior to it being covered. Except as provided in Clause 3.22.1.1, this Agreement shall be adjusted by change order for the cost and time of uncovering and restoring any work which is uncovered for inspection and proves to be installed in accordance with the Subcontract Documents, provided the Design-Builder had not previously instructed the Subcontractor to leave the work uncovered. If the Subcontractor uncovers work pursuant to a directive issued by the Design-Builder, and such work upon inspection does not comply with the Subcontract Documents, the Subcontractor shall be responsible for all costs and time of uncovering, correcting and restoring the work so as to make it conform to the Subcontract Documents. If the Design-Builder or some other entity for which the Subcontractor is not responsible caused the nonconforming condition, the Design-Builder shall be required to adjust this Agreement by change order for all such costs and time.

## 3.22.2   CORRECTION OF WORK

3.22.2.1    If the Design-Builder rejects the Subcontract Work or the Subcontract Work is not in conformance with the Subcontract Documents, the Subcontractor shall promptly correct the Subcontract Work whether it had been fabricated, installed or completed. The Subcontractor shall be responsible for the costs of correcting such Subcontract Work, any additional testing, inspections, and compensation for services and expenses of the Design-Builder made necessary by the defective Subcontract Work.

3.22.2.2    In addition to the Subcontractor's obligations under Paragraph 3.21, the Subcontractor agrees to promptly correct, after receipt of a written notice from the Design-Builder, all Subcontract Work performed under this Agreement which proves to be defective in workmanship or materials within a period of one year from the date of Substantial Completion of the Subcontract Work or for a longer period of time as may be required by specific warranties in the Subcontract Documents. Substantial Completion of the Subcontract Work, or a designated portion, occurs on the date when construction is sufficiently complete in accordance with the Subcontract Documents so that the Owner can occupy or utilize the Project, or a designated portion, for the use for which it is intended. If, during the one-year period, the Design-Builder fails to provide the Subcontractor with prompt written notice of the discovery of defective or nonconforming Subcontract Work, the Design-Builder shall neither have the right to require the Subcontractor to correct such Subcontract Work nor the right to make claim for breach of warranty. If the Subcontractor fails to correct defective or nonconforming Subcontract Work within a reasonable time after receipt of notice from the Design-Builder, the Design-Builder may correct such Subcontract Work pursuant to Subparagraph 10.1.1.

3.22.3   The Subcontractor's correction of Subcontract Work pursuant to this Paragraph 3.22 shall not extend the one-year period for the correction of Subcontract Work, but if Subcontract Work is first performed after Substantial Completion, the one-year period for corrections shall be extended by the time period after Substantial Completion and the performance of that portion of Subcontract Work. The Subcontractor's obligation to correct Subcontract Work within one year as described in this Paragraph 3.22 does not limit the enforcement

of Subcontractor's other obligations with regard to the Agreement and the Subcontract Documents.

3.22.4   If the Subcontractor's correction or removal of Subcontract Work destroys or damages completed or partially completed work of the Owner, the Design-Builder or any separate contractors, the Subcontractor shall be responsible for the cost of correcting such destroyed or damaged construction.

3.22.5   If portions of Subcontract Work which do not conform with the requirements of the Subcontract Documents are neither corrected by the Subcontractor nor accepted by the Design-Builder, the Subcontractor shall remove such Subcontract Work from the Project site if so directed by the Design-Builder.

3.23   MATERIALS OR EQUIPMENT FURNISHED BY OTHERS In the event the scope of the Subcontract Work includes installation of materials or equipment furnished by others, it shall be the responsibility of the Subcontractor to exercise proper care in receiving, handling, storing and installing such items, unless otherwise provided in the Subcontract Documents. The Subcontractor shall examine the items provided and report to the Design-Builder in writing any items it may discover that do not conform to requirements of the Subcontract Documents. The Subcontractor shall not proceed to install nonconforming items without further instructions from the Design-Builder. Loss or damage due to acts or omissions of the Subcontractor shall be deducted from any amounts due or to become due the Subcontractor.

3.24   SUBSTITUTIONS No substitutions shall be made in the Subcontract Work unless permitted in the Subcontract Documents, and only upon the Subcontractor first receiving all approvals required under the Subcontract Documents for substitutions.

3.25   USE OF DESIGN-BUILDER'S EQUIPMENT The Subcontractor, its agents, employees, subcontractors or suppliers shall use the Design-Builder's equipment only with the express written permission of the Design-Builder's designated representative and in accordance with the Design-Builder's terms and conditions for such use. If the Subcontractor or any of its agents, employees, subcontractors or suppliers utilize any of the Design-Builder's equipment, including machinery, tools, scaffolding, hoists, lifts or similar items owned, leased or under the control of the Design-Builder, the Subcontractor shall defend, indemnify and be liable to the Design-Builder as provided in Article 9 for all loss or damage (including bodily injury or death) which may arise from such use, except to the extent that such loss or damage is caused by the negligence of the Design-Builder's employees operating the Design-Builder's equipment.

3.26   WORK FOR OTHERS Until final completion of the Subcontract Work, the Subcontractor agrees not to perform any work directly for the Owner or any tenants, or deal directly with the Owner's representatives in connection with the Subcontract Work, unless otherwise approved in writing by the Design-Builder.

3.27   SUBCONTRACT BONDS

3.27.1   The Subcontractor _____ shall **X shall not** furnish to the Design-Builder, as the named Obligee, appropriate surety bonds to secure the faithful performance of the Subcontract Work and to satisfy all Subcontractor payment obligations related to Subcontract Work.

3.27.2   If a performance or payment bond, or both, are required of the Subcontractor under this Agreement, the bonds shall be in a form and by a surety mutually agreeable to the Design-Builder and Subcontractor, and in the full amount of the Subcontract Amount, unless otherwise specified.

3.27.3   The Subcontractor shall be reimbursed, without retainage, for the cost of any required performance or payment bonds simultaneously with the first progress payment. The

reimbursement amount for the subcontractor bonds shall not exceed N/A percent (N/A%) of the Subcontract Amount, which sum is included in the Subcontract Amount.

3.27.4   In the event the Subcontractor shall fail to promptly provide any required bonds, the Design-Builder may terminate this Agreement and enter into a subcontract for the balance of the Subcontract Work with another subcontractor. All Design-Builder costs and expenses incurred by the Design-Builder as a result of said termination shall be paid by the Subcontractor.

3.28 SYSTEMS AND EQUIPMENT STARTUP With the assistance of the Owner's maintenance personnel and the Design-Builder, the Subcontractor shall direct the check-out and operation of systems and equipment for readiness, and assist in their initial startup and the testing of the Subcontract Work.

3.29 COMPLIANCE WITH LAWS The Subcontractor agrees to be bound by, and at its own costs comply with all federal, state and local laws, ordinances and regulations (the Laws) applicable to the Subcontract Work, including but not limited to, equal employment opportunity, minority business enterprise, women's business enterprise, disadvantaged business enterprise, safety and all other Laws with which the Design-Builder must comply. The Subcontractor shall be liable to the Design-Builder and the Owner for all loss, cost and expense attributable to any acts of commission or omission by the Subcontractor, its employees and agents resulting from the failure to comply with Laws, including, but not limited to, all fines, penalties or corrective measures, except as provided in Subparagraph 3.14.9.

3.30 CONFIDENTIALITY To the extent the Owner-Design-Builder agreement provides for the confidentiality of any of the Owner's proprietary or otherwise confidential information disclosed in connection with the performance of this Agreement, the Subcontractor is equally bound by the Owner's confidentiality requirements.

3.31 ROYALTIES, PATENTS AND COPYRIGHTS The Subcontractor shall pay all royalties and license fees which may be due on the inclusion of any patented or copyrighted materials, methods or systems selected by the Subcontractor and incorporated in the Subcontract Work. The Subcontractor shall defend, indemnify and hold the Design-Builder and Owner harmless from all suits or claims for infringement of any patent rights or copyrights arising out of such selection. The Subcontractor shall be liable for all loss, including all costs, expenses, and attorneys' fees, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Subcontract Documents. However, if the Subcontractor has reason to believe that a particular design, process or product required by the Subcontract Documents is an infringement of a patent, the Subcontractor shall promptly furnish such information to the Design-Builder or be responsible to the Design-Builder and Owner for all loss sustained as a result.

3.32 LABOR RELATIONS (Insert here any conditions, obligations or requirements relative to labor relations and their effect on the project. Legal counsel is recommended.)

Soltek Pacific is an "Open Shop" firm that subcontracts with both "Open Shop" and "Union" Subcontractors.

The only requirement Soltek Pacific makes is payment of wages as defined in Prevailing Wage/Davis Bacon Wage Determination included as Attachment "F" to this agreement.

## ARTICLE 4
## DESIGN-BUILDER'S RESPONSIBILITIES

4.1 DESIGN-BUILDER'S REPRESENTATIVE The Design-Builder shall designate a person who shall be the Design-Builder's authorized representative. The Design-Builder's representative shall be the only person the Subcontractor shall look to for instructions, orders and/or directions, except in an emergency. The Design-Builder's representative is See attachment B.

4.2 PAYMENT BOND REVIEW The Design-Builder X has __ has not provided the Owner a payment bond. The Design-Builder's payment bond for the Project, if any, shall be made available by the Design-Builder for review and copying by the Subcontractor.

4.3 OWNER'S ABILITY TO PAY

4.3.1   The Subcontractor shall have the right upon request to receive from the Design-Builder such information as the Design-Builder has obtained relative to the Owner's financial ability to pay for the Work, including any subsequent material variation in such information. The Design-Builder, however, does not warrant the accuracy or completeness of the information provided by the Owner.

4.3.2   If the Subcontractor does not receive the information referenced in Subparagraph 4.3.1 with regard to the Owner's ability to pay for the Work as required by the Contract Documents, the Subcontractor may request the information from the Owner and/or the Owner's lender.

4.4 DESIGN-BUILDER APPLICATION FOR PAYMENT Upon request, the Design-Builder shall give the Subcontractor a copy of the most current Design-Builder application for payment reflecting the amounts approved and/or paid by the Owner for the Subcontract Work performed to date.

4.5 INFORMATION OR SERVICES The Subcontractor is entitled to request through the Design-Builder any information or services relevant to the performance of the Subcontract Work which is under the Owner's control. To the extent the Design-Builder receives such information or services, the Design-Builder shall provide them to the Subcontractor. The Design-Builder, however, does not warrant the accuracy or completeness of the information provided by the Owner.

4.6 STORAGE AREAS The Design-Builder shall allocate adequate storage areas, if available, for the Subcontractor's materials and equipment during the course of the Subcontract Work. Unless otherwise agreed upon, the Design-Builder shall reimburse the Subcontractor for the additional costs of having to relocate such storage areas at the direction of the Design-Builder.

4.7 TIMELY COMMUNICATIONS The Design-Builder shall transmit to the Subcontractor, with reasonable promptness, all submittals, transmittals, and written approvals relative to the Subcontract Work. Unless otherwise specified in the Subcontract Documents, communications by and with the Subcontractor's subcontractors, materialmen and suppliers shall be through the Subcontractor.

4.8 USE OF SUBCONTRACTOR'S EQUIPMENT The Design-Builder, its agents, employees or suppliers shall use the Subcontractor's equipment only with the express written permission of the Subcontractor's designated representative and in accordance with the Subcontractor's terms and conditions for such use. If the Design-Builder or any of its agents, employees or suppliers utilize any of the Subcontractor's equipment, including machinery, tools, scaffolding, hoists, lifts or similar items owned, leased or under the control of the Subcontractor, the Design-Builder shall defend, indemnify and be liable to the Subcontractor as provided in Article 9 for all loss or damage (including bodily injury or death) which may arise from such use, except to the extent that such loss or damage is caused by the negligence of the Subcontractor's employees operating the Subcontractor's equipment.

# ARTICLE 5
## PROGRESS SCHEDULE

5.1 TIME IS OF THE ESSENCE Time is of the essence for both parties. They mutually agree to see to the performance of their respective obligations so that the entire Project may be completed in accordance with the Subcontract Documents and particularly the Progress Schedule as set forth in Attachment I.

5.2 SCHEDULE OBLIGATIONS The Subcontractor shall provide the Design-Builder with all scheduling information proposed by the Subcontractor for the Subcontract Work. In consultation with the Subcontractor, the Design-Builder shall prepare the schedule for performance of the Work (the Progress Schedule) and shall revise and update such schedule, as necessary, as the Work progresses. Both the Design-Builder and the Subcontractor shall be bound by the Progress Schedule. The Progress Schedule and all subsequent changes and additional details shall be submitted to the Subcontractor promptly and reasonably in advance of the required performance. The Design-Builder shall have the right to determine and, if necessary, change the time, order and priority in which the various portions of the Work shall be performed and all other matters relative to the Subcontract Work.

5.3 DELAYS AND EXTENSIONS OF TIME

5.3.1 OWNER CAUSED DELAY Subject to Subparagraph 5.3.2, if the commencement and/or progress of the Subcontract Work is delayed without the fault or responsibility of the Subcontractor, the time for the Subcontract Work shall be extended by Subcontract Change Order to the extent obtained by the Design-Builder under the Subcontract Documents, and the Progress Schedule shall be revised accordingly.

5.3.2 CLAIMS RELATING TO OWNER The Subcontractor agrees to initiate all claims for which the Owner is or may be liable in the manner and within the time limits provided in the Subcontract Documents for like claims by the Design-Builder upon the Owner and in sufficient time for the Design-Builder to initiate such claims against the Owner in accordance with the Subcontract Documents. At the Subcontractor's request and expense to the extent agreed upon in writing, the Design-Builder agrees to permit the Subcontractor to prosecute a claim in the name of the Design-Builder for the use and benefit of the Subcontractor in the manner provided in the Subcontract Documents for like claims by the Design-Builder upon the Owner.

5.3.3 DESIGN-BUILDER CAUSED DELAY Nothing in this Article shall preclude the Subcontractor's recovery of delay damages caused by the Design-Builder.

5.3.4 CLAIMS RELATING TO DESIGN-BUILDER The Subcontractor shall give the Design-Builder written notice of all claims not included in Subparagraph 5.3.2 within seven (7) days of the Subcontractor's knowledge of the facts giving rise to the event for which claim is made; otherwise, such claims shall be deemed waived. All unresolved claims, disputes and other matters in question between the Design-Builder and the Subcontractor not relating to claims included in Subparagraph 5.3.2 shall be resolved in the manner provided in Article 11.

5.3.5   DAMAGES If the Subcontract Documents provide for liquidated or other damages for delay beyond the completion date set forth in the Subcontract Documents, and such damages are assessed, the Design-Builder may assess a share of the damages against the Subcontractor in proportion to the Subcontractor's share of the responsibility for the delay. However, the amount of such assessment shall not exceed the amount assessed against the Design-Builder. This Paragraph shall not limit the Subcontractor's liability to the Design-Builder for the Design-Builder's actual delay damages caused by the Subcontractor's delay.

5.4  MUTUAL WAIVER OF CONSEQUENCIAL DAMAGES

5.4.1   To the extent the agreement between the Owner and the Design-Builder provides for a mutual waiver of consequential damages by the Owner and the Design-Builder, the Design-Builder and Subcontractor waive claims against each other for consequential damages arising out of or relating to this Agreement, including to the extent provided in the agreement between the Owner and the Design-Builder, damages for principal office expenses and the compensation of personnel stationed there; loss of financing, business and reputation; and for loss of profit. Similarly, the Subcontractor shall obtain from its sub-subcontractors mutual waivers of consequential damages that correspond to the Subcontractor's waiver of consequential damages herein. To the extent applicable, this mutual waiver applies to consequential damages due to termination by the Design-Builder or the Owner in accordance with this Agreement or the agreement between the Owner and the Design-Builder. To the extent the agreement between the Owner and the Design-Builder does not preclude the award of liquidated damages, nothing contained in this Paragraph shall preclude the imposition of such damages, if applicable in accordance with the requirements of the Subcontract Documents.

5.4.2   To the extent the agreement between the Owner and the Design-Builder provides for a mutual waiver of consequential damages by the Owner and the Design-Builder, damages for which the Design-Builder is liable to the Owner including those related to Subparagraph 9.1.1 are not consequential damages for the purpose of this waiver. Similarly, to the extent the Subcontractor-sub-subcontractor agreement provides for a mutual waiver of consequential damages by the Owner and the Design-Builder, damages for which the Subcontractor is liable to lower-tiered parties due to the fault of the Owner or Design-Builder are not consequential damages for the purpose of this waiver.

## ARTICLE 6
## SUBCONTRACT AMOUNT

6.1  As full compensation for performance of this Agreement, Design-Builder agrees to pay Subcontractor in current funds for the satisfactory performance of the Subcontract Work subject to all applicable provisions of the Subcontract:

(a)  The fixed-price of **Two million eighty five thousand six hundred eighty six and 00/100 Dollars $2,085,686.00)** subject to additions and deductions as provided for in the Subcontract Documents; and/or

(b)  Unit prices in accordance with the attached schedule of Unit Prices and estimated quantities, which is incorporated by reference and identified as Attachment __Not Applicable__ ; and/or

    (c) Time and material rates and prices in accordance with the attached Schedule of Labor and Material Costs which is incorporated by reference and identified as Attachment ___Not Applicable___.

The fixed-price, unit prices and/or time and material rates and prices are referred to as the Subcontract Amount.

# ARTICLE 7
# CHANGES IN THE SUBCONTRACT WORK

7.1 SUBCONTRACT CHANGE ORDERS When the Design-Builder orders in writing, the Subcontractor, without nullifying this Agreement, shall make any and all changes in the Subcontract Work which are within the general scope of this Agreement. Any adjustment in the Subcontract Amount or Subcontract Time shall be authorized by a Subcontract Change Order. No adjustments shall be made for any changes performed by the Subcontractor that have not been ordered by the Design-Builder. A Subcontract Change Order is a written instrument prepared by the Design-Builder and signed by the Subcontractor stating their agreement upon the change in the Subcontract Work.

7.2 CONSTRUCTION CHANGE DIRECTIVES To the extent that the Subcontract Documents provide for Construction Change Directives in the absence of agreement on the terms of a Subcontract Change Order, the Subcontractor shall promptly comply with the Construction Change Directive and be entitled to apply for interim payment if the Subcontract Documents so provide.

7.3 UNKNOWN CONDITIONS If in the performance of the Subcontract Work the Subcontractor finds latent, concealed or subsurface physical conditions which differ materially from those indicated in the Subcontract Documents or unknown physical conditions of an unusual nature, which differ materially from those ordinarily found to exist, and not generally recognized as inherent in the kind of work provided for in this Agreement, the Subcontract Amount and/or the Progress Schedule shall be equitably adjusted by a Subcontract Change Order within a reasonable time after the conditions are first observed. The adjustment which the Subcontractor may receive shall be limited to the adjustment the Design-Builder receives from the Owner on behalf of the Subcontractor, or as otherwise provided under Subparagraph 5.3.2.

7.4 ADJUSTMENTS IN SUBCONTRACT AMOUNT If a Subcontract Change Order requires an adjustment in the Subcontract Amount, the adjustment shall be established by one of the following methods:

       1. Mutual acceptance of an itemized lump sum; or

       2. Unit prices as indicated in the Subcontract Documents or as subsequently agreed to by the parties; or

       3. Costs determined in a manner acceptable to the parties and a mutually acceptable fixed or percentage fee; or

       4. Another method provided in the Subcontract Documents.

7.5 SUBSTANTIATION OF ADJUSTMENT If the Subcontractor does not respond promptly or disputes the method of adjustment, the method and the adjustment shall be determined by the Design-Builder on the basis of reasonable expenditures and savings of those performing the Work attributable to the change, including, in the case of an increase in the Subcontract Amount, an allowance for overhead and profit of the percentage provided in Paragraph 7.6. The

Subcontractor may contest the reasonableness of any adjustment determined by the Design-Builder. The Subcontractor shall maintain for the Design-Builder's review and approval an appropriately itemized and substantiated accounting of the following items attributable to the Subcontract Change Order:

> 1. Labor costs, including Social Security, health, welfare, retirement and other fringe benefits as normally required, and state workers compensation insurance;
>
> 2. Costs of materials, supplies and equipment, whether incorporated in the Subcontract Work or consumed, including transportation costs;
>
> 3. Costs of renting machinery and equipment other than hand tools;
>
> 4. Costs of bond and insurance premiums, permit fees and taxes attributable to the change; and
>
> 5. Costs of additional supervision and field office personnel services necessitated by the change.

7.6 Adjustments shall be based on net change in Subcontractor's reasonable cost of performing the changed Subcontract Work plus, in case of a net increase in cost an agreed upon sum for overhead and profit not to exceed percentage allowed by Owner Documents.

7.7 NO OBLIGATION TO PERFORM The Subcontractor shall not perform changes in the Subcontract Work until a Subcontract Change Order has been executed or written instructions have been issued in accordance with Paragraph 7.2 or 7.9.

7.8 EMERGENCIES In an emergency affecting the safety of persons and/or property, the Subcontractor shall act, at its discretion, to prevent threatened damage, injury or loss. Any change in the Subcontract Amount and/or the Progress Schedule on account of emergency work shall be determined as provided in this Article.

7.9 INCIDENTAL CHANGES The Design-Builder may direct the Subcontractor to perform incidental changes in the Subcontract Work which do not involve adjustments in the Subcontract Amount or Subcontract Time. Incidental changes shall be consistent with the scope and intent of the Subcontract Documents. The Design-Builder shall initiate an incidental change in the Subcontract Work by issuing a written order to the Subcontractor. Such written notice shall be carried out promptly and is binding on the parties.

# ARTICLE 8
# PAYMENT

8.1 SCHEDULE OF VALUES As a condition to payment, the Subcontractor shall provide a schedule of values satisfactory to the Design-Builder not more than fifteen (15) days from the date of execution of this Agreement.

8.2 PROGRESS PAYMENTS

8.2.1 APPLICATIONS The Subcontractor's applications for payment shall be itemized and supported by substantiating data as required by the Subcontract Documents. The Subcontractor's application shall be notarized if required and if allowed under the Subcontract Documents may include properly authorized Subcontract Construction Change Directives. The Subcontractor's progress payment application for the

Exhibit A

Subcontract Work performed in the preceding payment period shall be submitted for approval of the Design-Builder in accordance with the schedule of values if required and Subparagraphs 8.2.2, 8.2.3, and 8.2.4. The Design-Builder shall incorporate the approved amount of the Subcontractor's progress payment application into the Design-Builder's payment application to the Owner for the same period and submit it to the Owner in a timely fashion. The Design-Builder shall immediately notify the Subcontractor of any changes in the amount requested on behalf of the Subcontractor.

8.2.2   RETAINAGE -- SEE ATTACHMENT "A" PARAGRAPH 16 FOR RETENTION.

8.2.3   TIME OF APPLICATION The Subcontractor shall submit progress payment applications to the Design-Builder no later than the 25 day of each payment period for the Subcontract Work performed up to and including the last day of the payment period indicating work completed and, to the extent allowed under Subparagraph 8.2.4, materials suitably stored during the preceding payment period.

8.2.4   STORED MATERIALS Unless otherwise provided in the Subcontract Documents, and if approved in advance by the Owner, applications for payment may include materials and equipment not incorporated in the Subcontract Work but delivered to and suitably stored at the site or at some other location agreed upon in writing. Approval of payment applications for such stored items on or off the site shall be conditioned upon submission by the Subcontractor of bills of sale and applicable insurance or such other procedures satisfactory to the Owner and Design-Builder to establish the Owner's title to such materials and equipment, or otherwise to protect the Owner's and Design-Builder's interest including transportation to the site.

8.2.5   TIME OF PAYMENT Receipt of payment by the Design-Builder from the Owner for the Subcontract Work is a condition precedent to payment by the Design-Builder to the Subcontractor. The Subcontractor hereby acknowledges that it relies on the credit of the Owner, not the Design-Builder for payment of Subcontract Work. Progress payments received from the Owner for the Subcontractor for satisfactory performance of the Subcontract Work shall be made no later than seven (7) days after receipt by the Design-Builder of payment from the Owner for the Subcontract Work.

8.2.6   PAYMENT DELAY If the Design-Builder has received payment from the Owner and if for any reason not the fault of the Subcontractor, the Subcontractor does not receive a progress payment from the Design-Builder within seven (7) days after the date such payment is due, as defined in Subparagraph 8.2.5, the Subcontractor, upon giving seven (7) days' written notice to the Design-Builder, and without prejudice to and in addition to any other legal remedies, may stop work until payment of the full amount owing to the Subcontractor has been received. The Subcontract Amount and Time shall be adjusted by the amount of the Subcontractor's reasonable and verified cost of shutdown, delay, and startup, which shall be effected by an appropriate Subcontractor Change Order.

8.2.7   PAYMENTS WITHHELD The Design-Builder may reject a Subcontractor payment application or nullify a previously approved Subcontractor payment application, in whole or in part, as may reasonably be necessary to protect the Design-Builder from loss or damage based upon:

> 1. The Subcontractor's repeated failure to perform the Subcontract Work as required by this Agreement;
>
> 2. Loss or damage arising out of or relating to this Agreement and caused by the Subcontractor to the Owner, Design-Builder or others to whom the Design-Builder may be liable;

3.  The Subcontractor's failure to properly pay for labor, materials, equipment or supplies furnished in connection with the Subcontract Work;

4.  Rejected, nonconforming or defective Subcontract Work which has not been corrected in a timely fashion;

5.  Reasonable evidence of delay in performance of the Subcontract Work such that the Work will not be completed within the Subcontract Time, and that the unpaid balance of the Subcontract Amount is not sufficient to offset the liquidated damages or actual damages that may be sustain by the Design-Builder as a result of the anticipated delay caused by the Subcontractor;

6.  Reasonable evidence demonstrating that the unpaid balance of the Subcontract Amount is insufficient to cover the cost to complete the Subcontract Work; or

7.  Third party claims involving the Subcontractor or reasonable evidence demonstrating that third party claims are likely to be filed unless and until the Subcontractor furnishes the Design-Builder with adequate security in the form of a surety bond, letter of credit or other collateral or commitment sufficient to discharge such claims if established.

The Design-Builder shall give written notice to the Subcontractor, at the time of disapproving or nullifying an application for payment, stating its specific reasons for such disapproval or nullification. When the above reasons for disapproving or nullifying an application for payment are removed, payment will be made for amounts previously withheld.

## 8.3  FINAL PAYMENT

**8.3.1  APPLICATION** Upon acceptance of the Subcontract Work by the Owner and the Design-Builder and receipt from the Subcontractor of evidence of fulfillment of the Subcontractor's obligations in accordance with the Subcontract Documents and Subparagraph 8.3.2, the Design-Builder shall incorporate the Subcontractor's application for final payment into the Design-Builder's next application for payment to the Owner without delay, or notify the Subcontractor if there is a delay and the reasons therefor.

**8.3.2  REQUIREMENTS** Before the Design-Builder shall be required to incorporate the Subcontractor's application for final payment into the Design-Builder's next application for payment, the Subcontractor shall submit to the Design-Builder:

1.  An affidavit that all payrolls, bills for materials and equipment, and other indebtedness connected with the Subcontract Work for which the Owner or its property or the Design-Builder or the Design-Builder's surety might in any way be liable, have been paid or otherwise satisfied;

2.  Consent of surety to final payment, if required;

3.  Satisfaction of required closeout procedures;

4.  Certification that insurance required by the Subcontract Documents to remain in effect beyond final payment pursuant to Subparagraphs 9.2.3.1 and 9.2.6 is in effect and will not be cancelled or allowed to expire without at least thirty (30) days' written notice to the Design-Builder unless a longer period is stipulated in this Agreement;

5. Other data, if required by the Design-Builder or Owner, such as receipts, releases, and waivers of liens to the extent and in such form as may be designated by the Design-Builder or Owner;

6. Written warranties, equipment manuals, startup and testing required in Paragraph 3.28; and

7. As-built drawings if required by the Subcontract Documents.

8.3.3 TIME OF PAYMENT Receipt of final payment by the Design-Builder from the Owner for the Subcontract Work is a condition precedent to payment by the Design-Builder to the Subcontractor. The Subcontractor hereby acknowledges that it relies on the credit of the Owner, not the Design-Builder for payment of Subcontract Work. Final payment of the balance due of the Contract Price shall be made to the Subcontractor:

1. Upon receipt of the Owner's waiver of all claims related to the Subcontract Work except for unsettled liens, unknown defective work, and non-compliance with the Subcontract Documents or warranties; and

2. Within seven (7) days after receipt by the Design-Builder of final payment from the Owner for such Subcontract Work.

8.3.4 FINAL PAYMENT DELAY If the Owner or its designated agent does not issue a certificate for final payment or the Design-Builder does not receive such payment for any cause which is not the fault of the Subcontractor, the Design-Builder shall promptly inform the Subcontractor in writing. The Design-Builder shall also diligently pursue, with the assistance of the Subcontractor, the prompt release by the Owner of the final payment due for the Subcontract Work. At the Subcontractor's request and expense, to the extent agreed upon in writing, the Design-Builder shall institute reasonable legal remedies to mitigate the damages and pursue payment of the Subcontractor's final payment including interest.

8.3.5 WAIVER OF CLAIMS Final payment shall constitute a waiver of all claims by the Subcontractor relating to the Subcontract Work, but shall in no way relieve the Subcontractor of liability for the obligations assumed under Paragraphs 3.21 and 3.22, or for faulty or defective work or services discovered after final payment.

8.4 LATE PAYMENT INTEREST To the extent obtained by the Design-Builder under the Subcontract Documents, progress payments or final payment due and unpaid under this Agreement shall bear interest from the date payment is due at the rate provided in the Subcontract Documents.

8.5 CONTINUING OBLIGATIONS Provided the Design-Builder is making payments on or has made payments to the Subcontractor in accordance with the terms of this Agreement, the Subcontractor shall reimburse the Design-Builder for all costs and expenses for any claim, obligation or lien asserted before or after final payment is made that arises from the performance of the Subcontract Work. The Subcontractor shall reimburse the Design-Builder for costs and expenses including attorneys' fees and costs and expenses incurred by the Design-Builder in satisfying, discharging or defending against any such claims, obligation or lien including any action brought or judgment recovered. In the event that any applicable law, statute, regulation or bond requires the Subcontractor to take any action prior to the expiration of the reasonable time for payment referenced in Subparagraph 8.2.5 in order to preserve or protect the Subcontractor's rights, if any, with respect to mechanics lien or bond claims, then the Subcontractor may take that action prior to the expiration of the reasonable time for payment and such action will not create the reimbursement obligation recited above nor be in violation of this Agreement or considered premature for purposes of preserving and protecting the Subcontractor's rights.

Exhibit A

8.6 PAYMENT USE RESTRICTION  Payments received by the Subcontractor shall be used to satisfy the indebtedness owed by the Subcontractor to any person furnishing labor or materials, or both, for use in performing the Subcontract Work through the most current period applicable to progress payments received from the Design-Builder before it is used for any other purpose. In the same manner, payments received by the Design-Builder from the Owner for the Subcontract Work shall be dedicated to payment to the Subcontractor. This provision shall bear on this Agreement only, and is not for the benefit of third parties. Moreover, it shall not be construed by the parties to this Agreement or third parties to require that dedicated sums of money or payments be deposited in separate accounts, or that there be other restrictions on commingling of funds. Neither shall these mutual covenants be construed to create any fiduciary duty on the Subcontractor or Design-Builder, nor create any tort cause of action or liability for breach of trust, punitive damages, or other equitable remedy or liability for alleged breach.

8.7 PAYMENT USE VERIFICATION  If the Design-Builder has reason to believe that the Subcontractor is not complying with the payment terms of this Agreement, the Design-Builder shall have the right to contact the Subcontractor's subcontractors and suppliers to ascertain whether they are being paid by the Subcontractor in accordance with this Agreement.

8.8 PARTIAL LIEN WAIVERS AND AFFIDAVITS  As a prerequisite for payments, the Subcontractor shall provide, in a form satisfactory to the Owner and Design-Builder, partial lien or claim waivers in the amount of the application for payment and affidavits covering its subcontractors and suppliers for completed Subcontract Work. Such waivers may be conditional upon payment. In no event shall Design-Builder require the Subcontractor to provide an unconditional waiver of lien or claim, either partial or final, prior to receiving payment or in an amount in excess of what it has been paid.

8.9 SUBCONTRACTOR PAYMENT FAILURE  Upon payment by the Design-Builder, the Subcontractor shall promptly pay its subcontractors and suppliers the amounts to which they are entitled. In the event the Design-Builder has reason to believe that labor, material or other obligations incurred in the performance of the Subcontract Work are not being paid, the Design-Builder may give written notice of a potential claim or lien to the Subcontractor and may take any steps deemed necessary to assure that progress payments are utilized to pay such obligations, including but not limited to the issuance of joint checks. If upon receipt of notice, the Subcontractor does not (a) supply evidence to the satisfaction of the Design-Builder that the moneys owing have been paid; or (b) post a bond indemnifying the Owner, the Design-Builder, the Design-Builder's surety, if any, and the premises from a claim or lien, the Design-Builder shall have the right to withhold from any payments due or to become due to the Subcontractor a reasonable amount to protect the Design-Builder from any and all loss, damage or expense including attorneys' fees that may arise out of or relate to any such claim or lien.

8.10 SUBCONTRACTOR ASSIGNMENT OF PAYMENTS  The Subcontractor shall not assign any moneys due or to become due under this Agreement, without the written consent of the Design-Builder, unless the assignment is intended to create a new security interest within the scope of Article 9 of the Uniform Commercial Code. Should the Subcontractor assign all or any part of any moneys due or to become due under this Agreement to create a new security interest or for any other purpose, the instrument of assignment shall contain a clause to the effect that the assignee's right in and to any money due or to become due to the Subcontractor shall be subject to the claims of all persons, firms and corporations for services rendered or materials supplied for the performance of the Subcontract Work.

8.11 PAYMENT NOT ACCEPTANCE  Payment to the Subcontractor does not constitute or imply acceptance of any portion of the Subcontract Work.

## ARTICLE 9
## INDEMNITY, INSURANCE AND WAIVER OF SUBROGATION

9.1    INDEMNITY To the fullest extent permitted by law, the Subcontractor shall defend, indemnify and hold harmless the Design-Builder, the Design-Builder's other subcontractors, the Architect/Engineer, the Owner and their agents, consultants and employees (the Indemnitees) from all claims for death and bodily injury to persons and property damage that may arise from the performance of the Subcontract Work to the extent of the negligence attributed to such acts or omissions by the Subcontractor, the Subcontractor's subcontractors or anyone employed directly or indirectly by any of them or by anyone for whose acts any of them may be liable, or the Indemnitees.  However, Subcontractor shall not be obligated to indemnify or defend the Indemnitees with respect to their sole or active negligence, or willful misconduct of the Indemnitees.  With respect to any defense obligation owed by Subcontractor to Contractor, Subcontractor shall timely comply with Civil Code section 2782.05, subdivision (e), upon receipt of a written tender of claim by Contractor.

9.1.1    NO LIMITATION ON LIABILITY In any and all claims against the Indemnitees by any employee of the Subcontractor, anyone directly or indirectly employed by the Subcontractor or anyone for whose acts the Subcontractor may be liable, the indemnification obligation shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under workers compensation acts, disability benefit acts or other employee benefit acts.

9.1.2    SAVINGS CLAUSE To the extent any part of Paragraph 9.1.1 or any part of Paragraph 9.1.2, is found as a matter of law to be void or unenforceable, the contrary terms shall be deemed stricken and the balance of the paragraph shall be enforceable to the fullest extent permitted by law.

9.2   INSURANCE SEE ATTACHMENT D FOR ADDITIONAL CLARIFICATIONS

9.2.1    SUBCONTRACTOR'S INSURANCE Before commencing the Subcontract Work, and as a condition of payment, the Subcontractor shall purchase and maintain insurance that will protect it from the claims arising out of its operations under this Agreement, whether the operations are by the Subcontractor, or any of its consultants or subcontractors or anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable.

9.2.2    MINIMUM LIMITS OF LIABILITY The Subcontractor shall maintain at least the limits of liability in a company satisfactory to the Design-Builder as set forth in Attachment D.

9.2.3    PROFESSIONAL LIABILITY INSURANCE SEE ATTACHMENT D-2 FOR ADDITIONAL CLARIFICATIONS

9.2.3.1 PROFESSIONAL LIABILITY INSURANCE  The Subcontractor shall require the Designer(s) to maintain Project Specific Professional Liability Insurance with a company satisfactory to the Contractor, including contractual liability insurance against the liability assumed in Paragraph 3.8, and including coverage for all professional liability caused by any of the Designer's(s') consultants. Said insurance shall have specific minimum limits as set forth below:

Limit of $_____ per claim

General Aggregate of $_____ for the subcontract services rendered

The Professional Liability Insurance shall contain prior acts coverage sufficient to cover all subcontract services rendered by the Designer.

Said insurance shall be continued in effect with an extended period of _____ years following final payment to the Designer.

Such insurance shall have a maximum deductible amount of $_____per occurrence. The deductible shall be paid by the Subcontractor or Designer.

The Subcontractor shall require the Designer to furnish to the Subcontractor and Design-Builder, before the Designer commences its services, a copy of its professional liability policy evidencing the coverages required in this Paragraph. No policy shall be cancelled or modified without thirty (30) days' prior written notice to the Subcontractor and Design-Builder.

SEE ATTACHMENT "D"

9.2.4   NUMBER OF POLICIES Commercial General Liability Insurance and other liability insurance may be arranged under a single policy for the full limits required or by a combination of underlying policies with the balance provided by an Excess or Umbrella Liability Policy.

9.2.5   CANCELLATION, RENEWAL AND MODIFICATION The Subcontractor shall maintain in effect all insurance coverages required under this Agreement at the Subcontractor's sole expense and with insurance companies acceptable to the Design-Builder. The policies shall contain a provision that coverage will not be cancelled or not renewed, nor restrictive modifications added, until at least thirty (30) days' prior written notice has been given to the Design-Builder. Certificates of insurance showing required coverage to be in force pursuant to Subparagraph 9.2.2 shall be filed with the Design-Builder prior to commencement of the Subcontract Work. In the event the Subcontractor fails to obtain or maintain any insurance coverage required under this Agreement, the Design-Builder may purchase such coverage as desired for the Design-Builder's benefit and charge the expense to the Subcontractor, or terminate this Agreement.

9.2.6   CONTINUATION OF COVERAGE The Subcontractor shall continue to carry Completed Operations Liability Insurance for at least 10 years after either ninety (90) days following Substantial Completion of the Work or final payment to the Design-Builder, whichever is earlier. The Subcontractor shall furnish the Design-Builder evidence of such insurance at final payment and one year from final payment.

9.2.7   BUILDER'S RISK INSURANCE

9.2.7.1   Upon written request of the Subcontractor, the Design-Builder shall provide the Subcontractor with a copy of the Builder's Risk policy of insurance or any other property or equipment insurance in force for the Project and procured by the Owner or Design-Builder. The Design-Builder will advise the Subcontractor if a Builder's Risk policy of insurance is not in force.

9.2.7.2   If the Owner or Design-Builder has not purchased Builder's Risk insurance satisfactory to the Subcontractor, the Subcontractor may procure such insurance as will protect the interests of the Subcontractor, its subcontractors and their subcontractors in the Subcontract Work.

9.2.7.3   If not covered under the Builder's Risk policy of insurance or any other property or equipment insurance required by the Subcontract Documents, the Subcontractor shall procure and maintain at the

Subcontractor's own expense property and equipment insurance for the Subcontract Work including portions of the Subcontract Work stored off the site or in transit, when such portions of the Subcontract Work are to be included in an application for payment under Article 8.

9.2.8    WAIVER OF SUBROGATION

9.2.8.1 The Design-Builder and Subcontractor waive all rights against each other, the Owner and the Architect/Engineer, and all of their respective consultants, subcontractors, and sub-subcontractors, agents and employees, for damages caused by perils to the extent covered by the proceeds of the insurance provided in Clause 9.2.7.1, except such rights as they may have to the insurance proceeds. The Subcontractor shall require similar waivers from its subcontractors.

9.2.9    ENDORSEMENT If the policies of insurance referred to in this Article require an endorsement to provide for continued coverage where there is a waiver of subrogation, the Owner's of such policies will cause them to be so endorsed.

# ARTICLE 10
# DESIGN-BUILDER'S RIGHT TO PERFORM SUBCONTRACTOR'S RESPONSIBILITIES AND TERMINATION OF AGREEMENT

## 10.1 FAILURE OF PERFORMANCE

10.1.1    NOTICE TO CURE If the Subcontractor refuses or fails to supply enough properly skilled workers, proper materials, or maintain the Progress Schedule, or fails to make prompt payment to its workers, subcontractors or suppliers, or disregards laws, ordinances, rules, regulations or orders of any public authority having jurisdiction, or otherwise is guilty of a material breach of a provision of this Agreement, the Subcontractor shall be deemed in default of this Agreement. If the Subcontractor fails within three (3) days after written notification to commence and continue satisfactory correction of the default with diligence and promptness, then the Design-Builder without prejudice to any other rights or remedies, shall have the right to any or all of the following remedies:

1.  Supply workers, materials, equipment and facilities as the Design-Builder deems necessary for the completion of the Subcontract Work or any part which the Subcontractor has failed to complete or perform after written notification, and charge the cost, including reasonable overhead, profit, attorneys' fees, costs and expenses to the Subcontractor;

2.  Contract with one or more additional contractors to perform such part of the Subcontract Work as the Design-Builder determines will provide the most expeditious completion of the Work, and charge the cost to the Subcontractor as provided under Clause 10.1.1.1; and/or

3.  Withhold any payments due or to become due the Subcontractor pending corrective action in amounts sufficient to cover losses and compel performance to the extent required by and to the satisfaction of the Design-Builder.

P800 HPS Mech. rev 6-1-13  Copyright and Published by AGC (Printed 2/10/2016 at 2:25 PM)

In the event of an emergency affecting the safety of persons or property, the Design-Builder may proceed as above without notice, but the Design-Builder shall give the Subcontractor notice promptly after the fact as a precondition of cost recovery.

10.1.2   TERMINATION BY DESIGN-BUILDER If the Subcontractor fails to commence and satisfactorily continue correction of a default within three (3) days after written notification issued under Subparagraph 10.1.1, then the Design-Builder may, in lieu of or in addition to Subparagraph 10.1.1, issue a second written notification, to the Subcontractor and its surety, if any. Such notice shall state that if the Subcontractor fails to commence and continue correction of a default within seven (7) days of the written notification, the Agreement will be deemed terminated. A written notice of termination shall be issued by the Design-Builder to the Subcontractor at the time the Subcontractor is terminated. The Design-Builder may furnish those materials, equipment and/or employ such workers or subcontractors as the Design-Builder deems necessary to maintain the orderly progress of the Work. All costs incurred by the Design-Builder in performing the Subcontract Work, including reasonable overhead, profit and attorneys' fees, costs and expenses, shall be deducted from any moneys due or to become due the Subcontractor. The Subcontractor shall be liable for the payment of any amount by which such expense may exceed the unpaid balance of the Subcontract Amount. At the Subcontractor's request, the Design-Builder shall provide a detailed accounting of the costs to finish the Subcontract Work.

10.1.3   USE OF SUBCONTRACTOR'S EQUIPMENT If the Design-Builder performs work under this Article, either directly or through other subcontractors, the Design-Builder or other subcontractors shall have the right to take and use any materials, implements, equipment, appliances or tools furnished by, or belonging to the Subcontractor and located at the Project site for the purpose of completing any remaining Subcontract Work. Immediately upon completion of the Subcontract Work, any remaining materials, implements, equipment, appliances or tools not consumed or incorporated in performance of the Subcontract Work, and furnished by, belonging to, or delivered to the Project by or on behalf of the Subcontractor, shall be returned to the Subcontractor in substantially the same condition as when they were taken, normal wear and tear excepted.

10.2 BANKRUPTCY

10.2.1   TERMINATION ABSENT CURE If the Subcontractor files a petition under the Bankruptcy Code, this Agreement shall terminate if the Subcontractor or the Subcontractor's trustee rejects the Agreement or, if there has been a default, the Subcontractor is unable to give adequate assurance that the Subcontractor will perform as required by this Agreement or otherwise is unable to comply with the requirements for assuming this Agreement under the applicable provisions of the Bankruptcy Code.

10.2.2   INTERIM REMEDIES If the Subcontractor is not performing in accordance with the Progress Schedule at the time a petition in bankruptcy is filed, or at any subsequent time, the Design-Builder, while awaiting the decision of the Subcontractor or its trustee to reject or to assume this Agreement and provide adequate assurance of its ability to perform, may avail itself of such remedies under this Article as are reasonably necessary to maintain the Progress Schedule. The Design-Builder may offset against any sums due or to become due the Subcontractor all costs incurred in pursuing any of the remedies provided including, but not limited to, reasonable overhead, profit and attorneys' fees. The Subcontractor shall be liable for the payment of any amount by which costs incurred may exceed the unpaid balance of the Subcontract Price.

10.3  SUSPENSION BY OWNER Should the Owner suspend the Work or any part which includes the Subcontract Work and such suspension is not due to any act or omission of the Design-Builder, or

any other person or entity for whose acts or omissions the Design-Builder may be liable, the Design-Builder shall notify the Subcontractor in writing and upon receiving notification the Subcontractor shall immediately suspend the Subcontract Work. In the event of Owner suspension, the Design-Builder's liability to the Subcontractor shall be limited to the extent of the Design-Builder's recovery on the Subcontractor's behalf under the Subcontract Documents. The Design-Builder agrees to cooperate with the Subcontractor, at the Subcontractor's expense, in the prosecution of any Subcontractor claim arising out of an Owner suspension and to permit the Subcontractor to prosecute the claim, in the name of the Design-Builder, for the use and benefit of the Subcontractor.

10.4  TERMINATION BY OWNER Should the Owner terminate its contract with the Design-Builder or any part which includes the Subcontract Work, the Design-Builder shall notify the Subcontractor in writing within three (3) days of the termination and upon written notification, this Agreement shall be terminated and the Subcontractor shall immediately stop the Subcontract Work, follow all of Design-Builder's instructions, and mitigate all costs. In the event of Owner termination, the Design-Builder's liability to the Subcontractor shall be limited to the extent of the Design-Builder's recovery on the Subcontractor's behalf under the Subcontract Documents. The Design-Builder agrees to cooperate with the Subcontractor, at the Subcontractor's expense, in the prosecution of any Subcontractor claim arising out of the Owner termination and to permit the Subcontractor to prosecute the claim, in the name of the Design-Builder, for the use and benefit of the Subcontractor, or assign the claim to the Subcontractor.

10.5  CONTINGENT ASSIGNMENT OF THIS AGREEMENT The Design-Builder's contingent assignment of this Agreement to the Owner, as provided in the Owner-Design-Builder agreement, is effective when the Owner has terminated the Owner-Design-Builder agreement for cause and has accepted the assignment by notifying the Subcontractor in writing. This contingent assignment is subject to the prior rights of a surety that may be obligated under the Design-Builder's bond, if any. Subcontractor consents to such assignment and agrees to be bound to the assignee by the terms of this Agreement, provided that the assignee fulfills the obligations of the Design-Builder.

10.6  SUSPENSION BY DESIGN-BUILDER The Design-Builder may order the Subcontractor in writing to suspend all or any part of the Subcontract Work for such period of time as may be determined to be appropriate for the convenience of the Design-Builder. Phased Work or interruptions of the Subcontract Work for short periods of time shall not be considered a suspension. The Subcontractor, after receipt of the Design-Builder's order, shall notify the Design-Builder in writing in sufficient time to permit the Design-Builder to provide timely notice to the Owner in accordance with the Owner -Design-Builder agreement of the effect of such order upon the Subcontract Work. The Subcontract Amount or Progress Schedule shall be adjusted by Subcontract Change Order for any increase in the time or cost of performance of this Agreement caused by such suspension. No claim under this Paragraph shall be allowed for any costs incurred more than fourteen (14) days prior to the Subcontractor's notice to the Design-Builder. Neither the Subcontract Amount nor the Progress Schedule shall be adjusted for any suspension, to the extent that performance would have been suspended, due in whole or in part to the fault or negligence of the Subcontractor or by a cause for which Subcontractor would have been responsible. The Subcontract Amount shall not be adjusted for any suspension to the extent that performance would have been suspended by a cause for which the Subcontractor would have been entitled only to a time extension under this Agreement.

10.7  WRONGFUL EXERCISE If the Design-Builder wrongfully exercises any option under this Article, the Design-Builder shall be liable to the Subcontractor solely for the reasonable value of Subcontract Work performed by the Subcontractor prior to the Design-Builder's wrongful action, including reasonable overhead and profit on the Subcontract Work performed, less prior payments made, together with reasonable overhead and profit on the Subcontract Work not executed, and other costs incurred by reason of such action.

10.8  TERMINATION BY SUBCONTRACTOR If the Subcontract Work has been stopped for thirty (30) days because the Subcontractor has not received progress payments or has been abandoned or

suspended for an unreasonable period of time not due to the fault or neglect of the Subcontractor, then the Subcontractor may terminate this Agreement upon giving the Design-Builder seven (7) days' written notice. Upon such termination, Subcontractor shall be entitled to recover from the Design-Builder payment for all Subcontract Work satisfactorily performed but not yet paid for, including reasonable overhead, profit and attorneys' fees, costs and expenses, subject to the terms of Paragraphs 8.2 and 8.3. The Design-Builder's liability for any other damages claimed by the Subcontractor under such circumstances shall be extinguished by the Design-Builder pursuing said damages and claims against the Owner, on the Subcontractor's behalf, in the manner provided for in Subparagraphs 10.3 and 10.4 of this Agreement.

## ARTICLE 11
## DISPUTE RESOLUTION

11.1   INITIAL DISPUTE RESOLUTION If a dispute arises out of or relates to this Agreement or its breach, the parties shall endeavor to settle the dispute first through direct discussions. If the dispute cannot be resolved through direct discussions, the parties shall participate in mediation under the Construction Industry Mediation Rules of the American Arbitration Association before recourse to any other form of binding dispute resolution. The location of the mediation shall be the location of the Project. Once a party files a request for mediation with the other party and with the American Arbitration Association, the parties agree to commence such mediation within thirty (30) days of filing of the request. Either party may terminate the mediation at any time after the first session, but the decision to terminate must be delivered in person to the other party and the mediator. Engaging in mediation is a condition precedent to any other form of binding dispute resolution.

11.2   WORK CONTINUATION AND PAYMENT Unless otherwise agreed in writing, the Subcontractor shall continue the Subcontract Work and maintain the Progress Schedule during any dispute resolution proceedings. It the Subcontractor continues to perform, the Design-Builder shall continue to make payments in accordance with this Agreement.

11.3   NO LIMITATION OF RIGHTS OR REMEDIES Nothing in this Article shall limit any rights or remedies not expressly waived by the Subcontractor which the Subcontractor may have under lien laws or payment bonds.

11.4   MULTIPARTY PROCEEDING The parties agree that to the extent permitted by Subcontract Document all parties necessary to resolve a claim shall be parties to the same dispute resolution proceeding. To the extent disputes between the Design-Builder and Subcontractor involve in whole or in part disputes between the Design-Builder and the Owner, disputes between the Subcontractor and the Design-Builder shall be decided by the same tribunal and in the same forum as disputes between the Design-Builder and the Owner.

11.5   DISPUTES BETWEEN DESIGN-BUILDER AND SUBCONTRACTOR In the event that the provisions for resolution of disputes between the Design-Builder and the Owner contained in the Subcontract Documents do not permit consolidation or joinder with disputes of third parties, such as the Subcontractor, resolution of disputes between the Subcontractor and the Design-Builder involving in whole or in part disputes between the Design-Builder and the Owner shall be stayed pending conclusion of any dispute resolution proceeding between the Design-Builder and the Owner. At the conclusion of those proceedings, disputes between the Subcontractor and the Design-Builder shall be submitted again to mediation pursuant to Paragraph 11.1. Any disputes not resolved by mediation shall be decided in the manner selected in the agreement between the Owner and the Design-Builder.

11.6   COST OF DISPUTE RESOLUTION The cost of any mediation proceeding shall be shared equally by the parties participating. The prevailing party in any dispute arising out of or relating to this

Agreement or its breach that is resolved by a dispute resolution procedure designated in the Subcontract Documents shall be entitled to recover from the other party reasonable attorneys' fees, costs and expenses incurred by the prevailing party in connection with such dispute resolution process.

# ARTICLE 12
## MISCELLANEOUS PROVISIONS

12.1  GOVERNING LAW  This Agreement shall be governed by the law in effect at the location of the Project.

12.2  SEVERABILITY  The partial or complete invalidity of any one or more provisions of this Agreement shall not affect the validity or continuing force and effect of any other provision.

12.3  NO WAIVER OF PERFORMANCE  The failure of either party to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of this Agreement, or to exercise any of its rights, shall not be construed as a waiver or relinquishment of term, covenant, condition or right with respect to further performance.

12.4  TITLES  The titles given to the Articles of this Agreement are for ease of reference only and shall not be relied upon or cited for any other purpose.

12.5  OTHER PROVISIONS AND DOCUMENTS  Other provisions and documents applicable to the Subcontract Work are set forth in Article 13.

12.6  JOINT DRAFTING  The parties expressly agree that this Agreement was jointly drafted, and that they both had opportunity to negotiate its terms and to obtain the assistance of counsel in reviewing its terms prior to execution. Therefor, this Agreement shall be construed neither against nor in favor of either party, but shall be construed in a neutral manner.

12.7 California Prevailing Wage Projects:  On any projects covered by the California prevailing wage laws, California Labor Code sections 1720-1815, the following conditions apply:

(a).  The provisions of California Labor Code sections 1771, 1775, 1776, 1777.5, 1813 and 1815 are attached to this Subcontract as "Labor Code Addendum" and are incorporated into this Subcontract by reference as though set forth in full.

(b).  Contractor will periodically monitor the payment of prevailing rates by Subcontractor to its employees.

(c).  Upon becoming aware of the failure of Subcontractor to pay prevailing rates, Contractor will promptly take action to halt or rectify such failure, including, but not limited to, retaining sufficient funds due Subcontractor for work performed on the public works project.

(d).  Prior to making final payment on the project to Subcontractor, Subcontractor shall be required to sign an affidavit under penalty of perjury that Subcontractor has paid the specified general prevailing rate of per diem wages to Subcontractors employees and all amounts due under California Labor Code section 1813 for all work on the public works project.

## ARTICLE 13
## EXISTING SUBCONTRACT DOCUMENTS

As defined in Paragraph 2.3, the following Attachments are a part of this Agreement.

ATTACHMENT A – Project Specific Requirements
ATTACHMENT B – Scope of Work
ATTACHMENT C – Prevailing Wage / Labor Code Requirements (Not Applicable)
ATTACHMENT D – Insurance Requirements
ATTACHMENT D-2—Insurance Requirements Professional Liability (Not Used)
ATTACHMENT E – Safety Requirements
ATTACHMENT F – Owner's RFP Documents
ATTACHMENT G – Owner Award and DD 1155
ATTACHMENT H – Construction Documents (Not Used)
ATTACHMENT I – Project Schedule
ATTACHMENT J – Davis-Bacon Wage Determination
ATTACHMENT K-4 – Small Business Subcontracting Plan
ATTACHMENT L- FAR Clauses
ATTACHMENT M-Federal Contract Requirements

This Agreement is entered into as of the date entered in Article 1 **010P80002509S**

ATTEST: _____

DESIGN-BUILDER **S & R Construction, A Joint Venture**

BY: _____

PRINT NAME:  David A. Carlin _____

PRINT TITLE: _____

ATTEST: _____

SUBCONTRACTOR  HPS Mechanical, Inc._____

BY: _____

PRINT NAME:  Leslie DenHerder _____

PRINT TITLE:  President _____

**CORPORATE SEAL IS REQUIRED, AFFIX HERE**

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

HPS MECHANICAL, INC., A California Corporation

**DEFENDANTS**

S & R CONSTRUCTION, A Joint Venture; A.O. REED & CO., A California Corporation; SOLPAC CONSTRUCTION, INC., A California Corporation; LIBERTY MUTUAL INSURANCE COMPANY, A Corporation

**(b)** County of Residence of First Listed Plaintiff  Kern
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  San Diego
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
David B. Potter, Arrache & Potter     (661) 328-1800
Street Address: 1200 Truxtun Ave., #200, Bakersfield, CA 93301
Mailing Address: P.O. Box 10809, Bakersfield, CA 93389-0809

Attorneys *(If Known)*

'18CV2797 WQHJLB

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**  **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane  ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☒ 130 Miller Act | ☐ 315 Airplane Product Liability  ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander  Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability  Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine  Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability  **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle  ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability  ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal  ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | Injury  ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI  ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS**  **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights  **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting  ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment  ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations  ☐ 530 General | | **IMMIGRATION** | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment  ☐ 535 Death Penalty | | ☐ 462 Naturalization Application | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other  **Other:** | | ☐ 465 Other Immigration Actions | |
| | ☐ 448 Education  ☐ 540 Mandamus & Other | | | |
| | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding

☐ 2  Removed from State Court

☐ 3  Remanded from Appellate Court

☐ 4  Reinstated or Reopened

☐ 5  Transferred from Another District
*(specify)*

☐ 6  Multidistrict Litigation - Transfer

☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title 40 U.S. Code 3131-3133

Brief description of cause:
Claim on Miller Act bond.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 392,567.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*     JUDGE _____     DOCKET NUMBER _____

DATE
12/12/2018

SIGNATURE OF ATTORNEY OF RECORD
*David B. Potter*

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II. Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III. Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV. Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V. Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.

Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.

**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI. Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII. Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.